# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| RANDY L. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-00555-CV-W-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER REMANDING CASE TO ALJ

Plaintiff Randy L. Miller seeks judicial review of the Commissioner of Social Security's denial of his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The Administrative Law Judge ("ALJ") found Plaintiff had multiple severe impairments, including a low intelligence quotient ("IQ"), status post colostomy and reversal, and leg amputation with prosthesis, but he retained the residual functional capacity ("RFC") to perform work as a small products assembler, housekeeper, and office helper.

Because the record requires further clarification on whether Plaintiff meets the requirements of Listing 12.05, the Court REMANDS the case to the ALJ for further proceedings.

### Factual and Procedural Background

A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed his application for disability insurance benefits on August 3, 2010, alleging a disability onset date of June 16, 2010. The Commissioner denied his application, and Plaintiff subsequently requested a hearing with an ALJ. On April 18, 2012, the ALJ issued an unfavorable decision. Plaintiff appealed the denial to the Appeals Council of the Social Security

Administration, and on April 4, 2013, it denied Plaintiff's request for review, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[1]

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a

Plaintiff contends the ALJ erred at Steps Three and Four. With regard to Step Three, Plaintiff argues that the ALJ erroneously concluded that he failed to meet the listing for intellectual disability. As for Step Four, Plaintiff posits the ALJ erred in formulating his RFC by: (1) improperly discounting his credibility, and (2) failing to include certain work-related limitations. Because the Court finds that the ALJ's Step Three analysis requires remand, it does not address Plaintiff's Step Four arguments.

**A. The Court cannot conclude that substantial evidence supports the ALJ's Step Three analysis.**

Step Three requires an ALJ to analyze whether a claimant's severe impairments meet a disorder listed in 20 C.F.R. pt. 404, subpt. p, app. 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ answers in the affirmative, the claimant is deemed disabled and the sequential process ends. *See id.* Plaintiff contends that the ALJ should have terminated her evaluation at Step Three because the record evidence clearly demonstrates he meets the listing requirement for an intellectual disability.

Listing 12.05 provides the standards for an intellectual disability. To meet Listing 12.05, the claimant must satisfy the requirements in the introductory paragraph and one of the subsections, which range from A through D. *See Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006) (citing 20 C.F.R. pt. 404, subpt. p, app. 1, § 12.05). Plaintiff's primary argument on appeal is that he meets Listing 12.05C. This listing requires Plaintiff to demonstrate: "(1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age

---

determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); see 20 C.F.R. § 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation in functioning." *Id.*

Here, the ALJ's 12.05C analysis is somewhat unclear. She found Plaintiff's showing insufficient because "[he] does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The record lacks evidence [that] the claimant's amputation impaired his ability to perform work activities in the past." R. at 16. From this discussion, it is unclear whether the ALJ analyzed all three requirements of Listing 12.05C or whether she found the last element lacking and accordingly ended the analysis. It appears to the Court that the latter was the case because the ALJ explicitly analyzed only the final requirement of 12.05C—*i.e.*, whether there was an additional, significant impairment. Nonetheless, the Court reviews each prong of Listing 12.05C to determine whether substantial evidence supports the ALJ's decision.

Neither party devotes much time to discussing whether Plaintiff satisfied the first requirement, because it is fairly clear that he did. Over the years, Plaintiff received numerous valid IQ scores in the 60-70 range. For instance, as recently as 2010, state agency evaluating psychologist Robert Pulcher, Ph.D. ("Dr. Pulcher") found that Plaintiff possessed a full scale IQ of 70. R. at 451. In her decision, the ALJ presumably accepted the score's validity, as she gave Dr. Pulcher's opinion—which included the IQ score—great weight. R. at 18. In another section of her opinion, the ALJ found that "[t]he claimant's lowest valid IQ score was a January 1987 verbal IQ of 61." R. at 15. Once again, the ALJ did not question the score's validity. R. at 15-16. Thus, it is fairly apparent that Plaintiff satisfied the first requirement of Listing 12.05C.

Similar to the first requirement, the second element articulated in *Maresh* merits little discussion. Listing 12.05 requires Plaintiff to show that his subaverage intellectual functioning

4

and adaptive functioning deficits manifested before age 22. *Maresh*, 438 F.3d at 899. The record is replete with evidence satisfying this requirement. During adolescence, Plaintiff received several IQ scores demonstrating subaverage intelligence. When Plaintiff was between ages 14 and 17, reviewing psychologists rendered several IQ scores in the 50-60 range. R. at 596-98, 604. Other evidence corroborates Plaintiff's difficulties with intellectual and adaptive functioning. For instance, Plaintiff demonstrated hyperactive tendencies during childhood, including severe behavioral problems, which resulted in him receiving Ritalin. R. at 361. Plaintiff also suffered from significant learning disabilities, culminating in his placement in special education classes and eventually a state-run home for the developmentally disabled. R. at 357, 361. At age 18, Plaintiff's mental impairments were deemed significant enough to require the appointment of a legal guardian to oversee his wellbeing. R. at 353. This record of intellectual functioning difficulties prior to age 22 sufficiently satisfies the second portion of Listing 12.05C. *See Maresh*, 438 F.3d at 900 (finding an onset before the age 22 when claimant struggled in special education classes, had difficulty reading and writing, had an *adult* IQ score of 70, and fought with other children).

The third requirement—whether there is an additional and significant impairment—is the primary point of contention. Under 12.05C, for an additional impairment to be considered "significant," it need not be severely disabling. *Sird v. Chater*, 105 F.3d 401, 403 (8th Cir. 1997). Rather, the claimant must only demonstrate that the impairment imposes "more than a slight or minimal" limitation on his ability to perform work. *Maresh*, 438 F.3d at 900 (quoting *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000)). At Step Three, the ALJ found that the "record lacks evidence [that] the claimant's amputation impaired his ability to perform work

activities in the past." R. at 16. The ALJ, however, made no Step Three finding with regards to Plaintiff's severe impairment arising from his diverticulitis-related[2] colostomy procedures.[3]

The Court cannot conclude, at this juncture, that substantial evidence supports the ALJ's finding that no additional, significant impairments existed. First, some evidence suggests that Plaintiff's leg amputation imposed more than minimal limitations. For instance, over the years, Plaintiff has suffered significant irritation and infections around the site of the amputation. R. at 486, 493-95, 501, 505, 506, 509-09, 513, 519, 520. In fact, some of these problems led to Plaintiff receiving an extended leave of absence from work. R. at 505, 514-15. Although these problems occurred prior to the alleged onset date, the evidence may still be somewhat relevant to his ongoing amputation related ailments. *See Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2000). More importantly, this evidence plainly contradicts the ALJ's statement that Plaintiff's amputation never impacted his ability to perform work.

Second, there is also some evidence that Plaintiff's diverticulitis-related colostomy procedures may have imposed more than a minimal or slight limitation. Between June 2010 and August 2011, Plaintiff suffered several colon ruptures from his diverticulitis, and underwent numerous surgeries, including two colostomy procedures. R. at 380, 396, 406-07, 416, 419, 530, 563, 571, 593. This record of extensive medical treatment and extended hospitalization suggests that Plaintiff's diverticulitis and past colostomies *might* have had more than a minimal impact on his ability to work.

Portions of the ALJ's opinion even suggest that she found these impairments imposed more than a slight burden on Plaintiff's work-related functioning. In finding these two

---

[2] Diverticulitis is an "[i]nflammation of a diverticulum, especially of the small pockets in the wall of the colon which fill with stagnant fecal material and become inflamed; rarely, they may cause obstruction, perforation, or bleeding." PDR Medical Dictionary 513 (1st ed. 1995).

[3] A colostomy procedure is the "establishment of an artificial cutaneous opening into the colon." *Id.* at 368.

6

impairments severe, the ALJ noted that "[t]he above impairments cause *significant* limitation in the claimant's ability to perform basic work activities." R. at 15 (emphasis added).[4] Later in the opinion, the ALJ found Plaintiff capable of performing light work, but assessed additional RFC limitations, including restrictions in walking, sitting, climbing, and kneeling. R. at 17. While these assessed limitations are not indicative of complete disability, it arguably suggests that Plaintiff's impairments either singly or in combination had more than a slight impairment on Plaintiff's ability to function in the workplace.

This conclusion, however, is not immovable. Other portions of the opinion suggest that the ALJ may have found Plaintiff's amputation and diverticulitis-related colostomy imposed only a slight impairment. For instance, the ALJ observed that despite Plaintiff's amputation problems, he performed work in the past that required walking and standing. R. at 18, 363-65. In regards to Plaintiff's diverticulitis-related colostomy, the ALJ found that a September 2011 doctor's visit resulted in the physician noting that Plaintiff was "doing well" after his most recent procedure. R. at 587-88. This evidence lends some credence to the conclusion that Plaintiff's impairments were only slight. However, without a more thorough explanation, the Court cannot reasonably conclude on the current record that substantial evidence supports the ALJ's Listing 12.05C analysis.

Because there is conflicting, rather than definitive evidence, on the severity of Plaintiff's impairments, the Court remands to the ALJ for further proceedings. *Compare Christner v. Astrue*, 498 F.3d 790, 794 (8th Cir. 2007) (remanding to the ALJ when it was unclear precisely why the ALJ found the claimant failed to meet Listing 12.05B), *with Maresh*, 438 F.3d at 900-01 (awarding benefits when the record evidence unequivocally demonstrated the claimant possessed

---

[4] Absent a more thorough discussion, it is difficult for the Court to reconcile this finding with the ALJ's later finding that these impairments *did not* significantly impact Plaintiff's ability to perform work.

an additional, significant impairment which clearly satisfied the requirements of 12.05C). Of course, the ALJ may, after further development of the issues on remand, conclude that Plaintiff still fails to meet the requirements of Listing 12.05C. If the ALJ so decides, she should provide a more thorough and definitive explanation for why precisely she reached this conclusion.

**B. On remand, the ALJ should consider the additional lower IQ scores in the record.**

Finally, the Court makes an additional observation about a record issue. At Step Three, the ALJ concluded that the lowest valid IQ score in the record was Plaintiff's 1987 verbal IQ score of 61. R. at 15. However, there are lower IQ scores in the record, including two verbal scale IQ scores in the 50s. R. at 596. The ALJ may have concluded that these scores were invalid, but the Court cannot tell from the current record if that was indeed the case. On remand, the ALJ should also address these scores as they directly relate to whether Plaintiff meets Listing 12.05B. *See* 20 C.F.R. pt. 404, subpt. p, app. 1, § 12.05B ("A *valid* verbal, performance, or full scale IQ of 59 or less.") (emphasis added).

**Conclusion**

For the foregoing reasons, the Court REMANDS this case to the ALJ for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Date: July 16, 2014  /s/ Greg Kays  
GREG KAYS, CHIEF JUDGE  
UNITED STATES DISTRICT COURT